No. 21-1731

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

PHARMACEUTICAL RESEARCH
AND MANUFACTURERS OF AMERICA,

Plaintiff - Appellant,

v.

STUART WILLIAMS; STACEY JASSEY; MARY PHIPPS;
ANDREW BEHM; JAMES BIALKE; AMY PARADIS;
RABIH NAHAS; SAMANTHA SCHIRMER; KENDRA METZ,
ALL IN THEIR OFFICIAL CAPACITIES AS
MEMBERS OF THE MINNESOTA BOARD OF PHARMACY,

Defendants - Appellees.

On Appeal from the United States District Court
for the District of Minnesota
Honorable David S. Doty, District Judge

**BRIEF AMICUS CURIAE OF PACIFIC LEGAL FOUNDATION
AND THE GOLDWATER INSTITUTE IN SUPPORT OF APPELLANTS**

J. DAVID BREEMER
DAVID J. DEERSON
Pacific Legal Foundation
930 G Street
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Amici Curiae Pacific Legal Foundation and The Goldwater Institute*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS............................................................................. i

TABLE OF AUTHORITIES ..................................................................... ii

IDENTITY AND INTERESTS OF AMICI CURIAE ............................1

STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(E) ...............2

ARGUMENT ...............................................................................................2

I.    FACTUAL BACKGROUND AND SUMMARY OF ARGUMENT.............2

II.   PHARMA MAY SEEK TO ENJOIN A STATE LAW
      AS A TAKINGS CLAUSE VIOLATION UNDER *EX PARTE YOUNG*
      AND/OR BY CHALLENGING THE LAW ON ITS FACE........................5

      A.    *Ex parte Young* Allows Equitable Relief-Seeking
            Takings  Claims Against State Officials Charged
            With Enforcing  a State Law That Takes Property ....................6

            1.  The *Ex parte Young* Decision.................................................6

            2.  Federal Courts Have Consistently Permitted
                Takings Plaintiffs to Seek Equitable Relief Under
                *Ex parte Young,* and *Knick* Did Not Change That Doctrine ......................7

      B.    An Injunction Is Also Available to Halt Enforcement
            of a Law That Violates the Takings Clause On Its Face............................9

      C.    Important Practical Considerations Justify Equitable
            Relief In the *Ex parte Young* and Facial Takings Context.......................11

CONCLUSION .......................................................................................16

CERTIFICATE OF COMPLIANCE....................................................17

CERTIFICATE OF SERVICE .............................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012)....................1

*Armstrong v. United States*, 364 U.S. 40 (1960) .....................................15

*Arnett v. Myers*, 281 F.3d 552 (6th Cir. 2002)..........................................7

*Babbitt v. Youpee*, 519 U.S. 234 (1997) ................................................10

*Bay Point Properties, Inc. v. Mississippi Transportation Comm'n*,
    937 F.3d 454 (5th Cir. 2019) ..................................................8

*City of Los Angeles v. Patel*, 576 U.S. 409 (2015) ...................................9

*Dakota, Minn. & E. R.R. v. South Dakota*, 362 F.3d 512 (8th Cir. 2004)................7

*Duke Power Co. v. Carolina Envt'l Study Group, Inc.*,
    438 U.S. 59 (1978)...........................................................12

*Eastern Enters. v. Apfel*, 524 U.S. 498 (1998) ....................................4, 14

*Fowler v. Guerin*, 889 F.3d 1112 (9th Cir. 2018)......................................7

*Goldwater Inst. v. U.S. Dep't of Health & Human Servs.*,
    804 F. App'x 661 (9th Cir. 2020)............................................2

*Haskell v. Cowham*, 187 F. 403 (8th Cir. 1911) .......................................7

*Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.*,
    452 U.S. 264 (1981)...........................................................10

*Horne v. Dep't of Agric.*, 576 U.S. 350 (2015) ...................................1, 15

*Jackson v. Raffensperger*, 843 S.E.2d 576 (Ga. 2020).................................2

*Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470 (1987)................10

*Knick v. Township of Scott*,
    __ U.S. __, 139 S. Ct. 2162 (2019)...................................*passim*

*Kolton v. Frerichs*, 869 F.3d 532 (7th Cir. 2017) .................................................... 7

*Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013) ....................... 1

*Lee v. Bickell*, 292 U.S. 415 (1934) ........................................................................ 13

*Merck & Co. v. U.S. Dep't of Health & Human Servs.*,
    962 F.3d 531 (D.C. Cir. 2020).......................................................................... 2

*Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) ................................... 1

*PhRMA v. Williams*,
    Civ. No. 20-1497, 2021 WL 963760 (D. Minn. Mar. 15, 2021) ........... 3-4, 8, 15

*Puckett v. Lexington-Fayette Urban Cty. Gov't*,
    833 F.3d 590 (6th Cir. 2016) ............................................................................ 7

*Ramirez de Arellano v. Weinberger*, 745 F.2d 1500 (D.C. Cir. 1984)...................... 4

*San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323 (2005) ...... 4, 9

*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44 (1996)............................................. 6

*Severance v. Patterson*, 566 F.3d 490 (5th Cir. 2009) ............................................. 7

*Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337 (1969)................... 14

*Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006)................................................... 7

*Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725 (1997) .............................. 1

*Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)............................... 10

*Washington Legal Found. v. Texas Equal Access to Just. Found.*,
    270 F.3d 180 (5th Cir. 2001) ............................................................................ 4

*Yee v. City of Escondido*, 503 U.S. 519 (1992) ...................................................... 10

*Ex parte Young*, 209 U.S. 123 (1908)................................................................*passim*

## Statute

Minn. Stat. § 151.74.................................................................................................. 3

**Court Rule**

Fed. R. App. P. 29 ...................................................................................................1

**Miscellaneous**

*Minnesota House Passes Alec Smith Insulin Affordability Act*,
    Minnesota House of Representatives: Legislative News and Views
    (Apr. 14, 2020),
    https://www.house.leg.state.mn.us/members/profiles/news/15518/2
    9389...........................................................................................................3

O'Grady, Catherine Gage, *The Role of Speculation in Facial
    Challenges*, 53 Ariz. L. Rev. 867 (2011)...........................................10

Sandefur, Timothy, *The Timing of Facial Challenges*,
    43 Akron L. Rev. 51 (2010)..............................................................10

**OF CONSENT TO FILING OF THE BRIEF AMICUS CURIAE OF PACIFIC LEGAL FOUNDATION AND THE GOLDWATER INSTITUTE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 29, Pacific Legal Foundation states that all parties to this suit have consented to the filing of this brief amicus curiae.

## IDENTITY AND INTERESTS OF AMICI CURIAE

Pacific Legal Foundation (PLF) was founded over 40 years ago and is widely recognized as the most experienced nonprofit legal foundation of its kind. PLF attorneys have participated as lead counsel or amicus curiae in several landmark Supreme Court cases defending the constitutional right to be free from uncompensated takings of private property. *See, e.g.*, *Knick v. Township of Scott*, __ U.S. __, 139 S. Ct. 2162 (2019); *Horne v. Dep't of Agric.*, 576 U.S. 350 (2015); *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595 (2013); *Arkansas Game & Fish Comm'n v. United States*, 568 U.S. 23 (2012); *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725 (1997); *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987). PLF has offices in California, Florida, and Virginia and regularly litigates matters affecting property rights in courts across the country.

The Goldwater Institute (GI) was established in 1988 as a nonpartisan public policy and research foundation devoted to advancing the principles of limited

government, individual freedom, and constitutional protections through litigation, research, policy briefings, and advocacy. Through its Scharf-Norton Center for Constitutional Litigation, GI litigates cases and files amicus briefs when its or its clients' objectives are directly implicated. Among GI's principal goals are the defense of private property rights and the expansion of freedom of choice in medicine. *See, e.g.*, *Merck & Co. v. U.S. Dep't of Health & Human Servs.*, 962 F.3d 531 (D.C. Cir. 2020); *Goldwater Inst. v. U.S. Dep't of Health & Human Servs.*, 804 F. App'x 661 (9th Cir. 2020); *Jackson v. Raffensperger*, 843 S.E.2d 576 (Ga. 2020).

## STATEMENT PURSUANT TO FED. R. APP. P. 29(a)(4)(E)

Amici Curiae state:

1.  No party's counsel authored this brief in whole or in part.

2.  No party or party's counsel contributed money that was intended to fund preparing or submitting the brief.

3.  No person—other than the amici curiae or their counsel—contributed money that was intended to fund preparing or submitting the brief.

## ARGUMENT

### I.   Factual Background and Summary of Argument

A little over a year ago, Minnesota passed the Insulin Affordability Act (Act), which forces the manufactures of insulin to donate massive quantities of their insulin product to members of the public in need of the drug, and to bear the expense and

other burdens associated with administering the free medicine program. *See generally* Minn. Stat. § 151.74.

In addition to compelling the manufacturers to give away their product, the Act forces them to bear the administrative cost of evaluating and serving those who are eligible through two programs: the "Continuing Safety Net Program," which requires manufacturers to provide insulin products at no charge to eligible Minnesotans in 90-day increments for up to one year, and the "Urgent Need Program," which requires manufacturers to give a 30-day supply of free insulin to qualifying patients. *PhRMA v. Williams*, Civ. No. 20-1497, 2021 WL 963760, at *2 (D. Minn. Mar. 15, 2021). In both cases, the Act requires manufacturers to "review applications [for free insulin], determine whether the applicant meets the eligibility criteria, and [to] notify applicants" of decisions and processes regarding the distribution of free insulin to the applicants. *Id*. at *1-2.

The Act is intended to "require insulin manufacturers to be part of the solution" to the problem of the high cost of medicine for diabetics and others in need of insulin. *Minnesota House Passes Alec Smith Insulin Affordability Act*, Minnesota House of Representatives: Legislative News and Views (Apr. 14, 2020).[1] But it includes no provision for just compensation to manufacturers compelled to supply free product to solve the state's insulin supply concerns.

---

[1] https://www.house.leg.state.mn.us/members/profile/news/15518/29389

The manufacturers, arguing that the Act is facially unconstitutional, sought a declaration that it violates the Fifth Amendment's Takings Clause and an injunction preventing its enforcement. However, based on a misreading of *Knick v. Township of Scott*, 139 S. Ct. 2162 (2019), the District Court held that equitable relief was unavailable as a federal remedy for the Act's ongoing violation of the Takings Clause. *PhRMA*, 2021 WL 963760, at *5. That was error.

*Knick* merely held that a federal takings claim accrues in federal court as soon as an uncompensated taking occurs, whether or not overlapping remedies for a taking exist in state court. While the most common remedy for a taking raised in federal court is monetary compensation, a well-settled exception exists under *Ex parte Young*, 209 U.S. 123 (1908), and in the facial takings context, for suits seeking equitable relief against state officials. *Knick* did not alter this exception. As the following shows, citizens are entitled to sue state officials for equitable relief from a law that causes an unconstitutional taking. *See Eastern Enters. v. Apfel*, 524 U.S. 498, 538 (1998) (declaratory and injunctive relief available in takings case); *Ramirez de Arellano v. Weinberger,* 745 F.2d 1500, 1527 (D.C. Cir. 1984) ("Equity will not hesitate to enjoin an unconstitutional taking."); *Washington Legal Found. v. Texas Equal Access to Just. Found.*, 270 F.3d 180, 190-93 (5th Cir. 2001) (citing numerous cases explaining that injunctions are available in takings cases); *San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323, 345 (2005) (equitable relief is

proper when a takings claimant challenges a law as an unconstitutional taking on its face).

Here, PhRMA's claim falls within the relatively narrow class of takings claims that may seek equitable relief rather than monetary compensation. PhRMA sued state officials to halt unconstitutional enforcement of the Act, invoking *Ex parte Young*, and alleged that the Act causes an unconstitutional taking on its face. State officials may believe they are entitled to prevail on the merits. But they cannot escape scrutiny on the merits by raising a purported equitable relief-based jurisdictional bar. That bar simply does not exist in this type of suit.

## II.    Pharma May Seek to Enjoin a State Law as a Takings Clause Violation Under *Ex parte Young* and/or By Challenging the Law On Its Face

While monetary compensation may be the typical federal remedy for an unconstitutional taking, property owners are entitled to seek equitable relief in two limited circumstances: (1) when they sue state officials under *Ex parte Young* for prospective relief from enforcement of a law causing an uncompensated taking and (2) when the claim alleges that a law is an unconstitutional taking on its face. In practice, these two classes of takings cases often overlap, as they do here. But regardless, the point remains that equitable relief is available in both contexts. Since the manufacturers' claim invokes both doctrines, the district court was wrong to withhold jurisdiction.

### A. *Ex parte Young* Allows Equitable Relief-Seeking Takings Claims Against State Officials Charged With Enforcing a State Law That Takes Property

#### 1. The *Ex parte Young* Decision

*Young* involved a challenge by railroad owners to a Minnesota statute that regulated and diminished the carriage rates the railroads could charge. The railroad owners sought anticipatory equitable relief against the state's Attorney General, alleging that the rate legislation and resulting reductions were confiscatory. 209 U.S. at 129-31, 145. The Attorney General argued that the federal court lacked jurisdiction to enter an equitable remedy against a state's enforcement of its own laws. *Id*. at 149. The Supreme Court disagreed, holding that railroad owners had "the right to enjoin a state officer from executing a state law in conflict with the Constitution." *Id*. at 150-51. There was no reason a state officer could not be enjoined by a federal court "from doing an act which he had no legal right to do." *Id*. at 159. *See also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 169 (1996) (Souter, J., dissenting) ("Under *Young*, 'a federal court . . . may enjoin state officials to conform their future conduct to the requirements of federal law'" (quoting *Quern v. Jordan*, 440 U.S. 332, 337 (1979))).

## 2. Federal Courts Have Consistently Permitted Takings Plaintiffs to Seek Equitable Relief Under *Ex parte Young*, and *Knick* Did Not Change That Doctrine

Importantly, *Young* was effectively an early takings case resolved by equitable remedies. In the century that has passed since *Young*, nothing has occurred in the law to remove injunctive relief as a remedy for plaintiffs who assert that a state law operates to take private property *See, e.g.*, *Puckett v. Lexington-Fayette Urban Cty. Gov't*, 833 F.3d 590, 598-99 (6th Cir. 2016) ("[T]he *Ex parte Young* doctrine is applicable to permit suit against the individual state officers . . . for the alleged violations of the . . . Takings Clause.").

In fact, federal appellate courts have frequently held that an injunction to halt enforcement of laws that inflict uncompensated takings remain available pursuant to *Ex parte Young. See, e.g.*, *Dakota, Minn. & E. R.R. v. South Dakota*, 362 F.3d 512, 516-18 (8th Cir. 2004); *Haskell v. Cowham*, 187 F. 403, 412 (8th Cir. 1911); *Fowler v. Guerin*, 889 F.3d 1112, 1119-20 (9th Cir. 2018); *Kolton v. Frerichs*, 869 F.3d 532, 535-36 (7th Cir. 2017); *Severance v. Patterson*, 566 F.3d 490, 495 (5th Cir. 2009); *Suever v. Connell*, 439 F.3d 1142, 1148 (9th Cir. 2006); *Arnett v. Myers*, 281 F.3d 552, 567-68 (6th Cir. 2002).

The district court should have looked to the settled law arising from *Ex parte Young* when weighing the propriety of PhRMA's request for equitable relief from enforcement of the statute at issue here. Instead, it relied on the Supreme Court's

2019 decision in *Knick v. Township of Scott*, 139 S. Ct. 2162. *See* 2021 WL 963760, at \*4. The district court apparently believed that *Knick* forecloses equitable relief in all federal takings cases, including those arising under *Ex parte Young*. *Id*. That is not correct.

*Knick* involved a challenge to a local ordinance. 139 S. Ct. at 2168. The property owner did not sue state officials for equitable relief, nor challenge a state law, nor did she invoke *Ex parte Young*. And the *Knick* Court did not address the nature or propriety of takings plaintiffs seeking equitable relief against state officials under *Ex parte Young*. Instead, it simply held an unconstitutional takings claim arises in federal court as soon as the government takes property without compensation, and thus, that potential state court takings remedies are irrelevant to federal takings jurisdiction and need not be exhausted by the claimant.[2] 139 S. Ct. at 2171.

*Knick* did not overrule *Ex parte Young*, and cannot be interpreted as restricting settled, specialized doctrines that were not briefed or addressed. *See Bay Point Properties, Inc. v. Mississippi Transportation Comm'n*, 937 F.3d 454, 456 (5th Cir.

---

[2] When the *Knick* Court observed that equitable relief is not normally available to one raising an as-applied claim against a local government "[a]s long as an adequate provision for obtaining just compensation exists," *id*. at 2176, it was not referring to the availability of state court damages remedies, as the district court seemed to think. It was referring to availability of damages in *federal* court. Indeed, the thrust of *Knick* was that citizens raising typical (as-applied) claims against local government do not have to pursue state court damages remedies first; they can seek monetary compensation in federal court as soon as a taking occurs. *Id*. at 2170-71. Nothing here was intended to change *Ex parte Young* or facial takings law.

2019). In short, *Ex parte Young*, not *Knick*, is the primary guidepost here. Under existing law, takings claimants may seek an injunction in federal court to prohibit an officer of the state "from doing an act which he had no legal right to do," *Young*, 209 U.S. at 159, such as enforcing a state law that takes property without compensation. To the extent *Knick* is relevant, it is so only for making clear that the existence of state court takings remedies are no longer a limit or predicate to the federal courts' jurisdiction over takings claims, including ones arising under the umbrella of *Ex parte Young*.

**B.    An Injunction Is Also Available to Halt Enforcement of a Law That Violates the Takings Clause On Its Face**

Even setting aside the *Ex parte Young* doctrine, federal courts may issue an injunction and declaration when a takings claimant asserts that a law causes a taking on its face, rather than merely in particular circumstances. *City of Los Angeles v. Patel,* 576 U.S. 409, 415 (2015) ("[A] facial challenge is an attack on a statute itself as opposed to a particular application."). Generally speaking, a facial takings claim asserts that a law takes property without compensation upon enactment, in almost every situation to which the law applies. *Id.*

The Supreme Court has concluded that equitable relief is proper when the plaintiff clearly asserts a claim that a law is facially unconstitutional because it fails to provide for compensation. *San Remo Hotel, L.P. v. City & Cty. of San Francisco*, 545 U.S. 323, 345 (2005) (facial takings challenges "by their nature request[] relief

distinct from the provision of 'just compensation,'" and can be raised "directly in federal court"). In fact, the Court has regularly adjudicated facial taking claims seeking equitable relief without any suggestion an injunctive remedy was improper. *See Hodel v. Virginia Surface Min. and Reclamation Ass'n, Inc.*, 452 U.S. 264, 295-96 (1981); *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 501-02 (1987); *Babbitt v. Youpee*, 519 U.S. 234, 242-43 (1997); *see also Yee v. City of Escondido*, 503 U.S. 519, 533-34 (1992) (adjudicating a facial takings claim including a request for injunctive relief).

This should be no surprise: facial challenges go "hand-in-hand" with requests for equitable relief. Catherine Gage O'Grady, *The Role of Speculation in Facial Challenges*, 53 Ariz. L. Rev. 867, 883 (2011). In a facial takings challenge, as in most facial constitutional challenges, the proper remedy "is typically not compensation but an injunction against enforcement and a declaration that the law is invalid." Timothy Sandefur, *The Timing of Facial Challenges*, 43 Akron L. Rev. 51, 61 (2010); *see Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 386 (1926) (A facial challenge alleges that "the ordinance in effect constitutes a present invasion of [a plaintiff's] property rights and a threat to continue it," and "the equitable jurisdiction is clear."). Because the Plaintiffs here allege that the Act causes a taking of the subject manufacturers' property on its face—without a concurrent provision for compensation—the proper remedy is injunctive relief.

### C. Important Practical Considerations Justify Equitable Relief In the *Ex parte Young* and Facial Takings Context

The rule that takings plaintiffs may seek equitable relief through a facial and *Ex parte Young* vehicle has more than just precedent and tradition to commend it— although these alone should suffice to reverse the district court's decision. The courts' acceptance of injunctions in *Ex parte Young* and facial cases is ultimately grounded in important considerations of fairness, justice, and efficiency.

Prospective injunctive relief is intended, at least in part, to enable plaintiffs to challenge and invalidate newly enacted, constitutionally suspect laws before enforcement causes serious, unnecessary injury. Such pre-enforcement challenges are particularly important when a law requires a property owner to choose between either complying with the allegedly unconstitutional law and sustaining substantial damages or violating the law and subjecting itself to significant financial penalties for doing so. If property owners cannot challenge the constitutionality of the law upon enactment through a claim seeking equitable relief, they will have to sustain potentially catastrophic losses as a precondition of testing the constitutionality of the law, which violates important equitable principles. *Young*, 209 U.S. at 164-65. Indeed, such losses could themselves prevent the resolution of the essential constitutional question.

Starting with *Ex parte Young*, the Supreme Court has fashioned pre-enforcement claims for declaratory and injunctive relief as a means to test the

constitutional validity of a law impacting economic rights without requiring the plaintiff to incur serious damage (either through compliance or penalties) that unnecessarily harms the plaintiff, complicates litigation, and results in suboptimal relief. *See, e.g.*, *Duke Power Co. v. Carolina Envt'l Study Group, Inc.*, 438 U.S. 59, 71 n.15 (1978) ("[I]ndividuals threatened with a taking [may] seek a declaration of the constitutionality of the disputed governmental action before potentially uncompensable damages are sustained.").

*Ex parte Young* provides perhaps the most apt example. There, the challenged law reduced railroad rates while imposing substantial financial penalties on railroads that violated the rate reductions. 209 U.S. at 164-65. The Court emphasized that the legislative scheme potentially put the railroads in the position of having to violate the law, on pain of substantial financial penalties or even imprisonment, before they could challenge it as an unconstitutional taking of private property. *Id*. The *Young* Court stated that "to impose upon a party interested the burden of obtaining a judicial decision of such a question . . . only upon the condition that, if unsuccessful, he must suffer imprisonment and pay fines, as provided in these acts, is in effect to close up all approaches to the courts." *Id.* at 148. In this situation, the Court allowed injunctive relief, both as part of a facial claim against the law's penalty scheme and as a more general vehicle to obtain a constitutional ruling prior to the law's enforcement. *Id.* at 155-56.

This case involves similar considerations. PhRMA alleges that the Minnesota law requiring it to provide insulin to people for free causes a taking of property on its face. The law imposes severe financial penalties if the manufacturers failed to abide by the confiscations. They therefore face the same "Catch-22" that was present in *Ex parte Young*. Absent equitable relief, the manufacturers must either retool their entire business operation to administer and provide insulin for free, or violate the law and incur penalties, before they may obtain a ruling that the law unconstitutionally confiscates private property interests on its face.

There is an additional reason for equitable relief in cases like this: avoidance of a multiplicity of separate damages suits arising from a law unconstitutional in all cases. *See, e.g.*, *Lee v. Bickell*, 292 U.S. 415, 421 (1934) ("[W]e are not in doubt" that an injunction is appropriate where a "multiplicity of actions [would be] necessary for redress at law."). As noted above, facial claims generally assert that a law is unconstitutional in every or almost every application. Since state statutes generally affect many parties, a facial challenge like this effectively asserts that enactment of a challenged law unconstitutionally takes property from many interested parties.

If an injunction is unavailable even where a court concludes that a law causes a taking on its face, then each and every person to whom the law applies would have to file a separate claim to be made constitutionally whole. This would mean dozens

or hundreds of subsequent separate claims arising from a law already held unconstitutional as a facial taking, each requiring a separate trial to establish the proper amount of damages for each affected party. This has never been adopted as the process for providing constitutional relief to those subject to a law that takes property on its face. Instead, courts enjoin provisions causing a facial taking, thereby halting the violation, preventing a multiplicity of suits, and allowing the government to rescind the law or rewrite it to include a mechanism for compensation to all those subjected to an unconstitutional taking. *See Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 342 (1969) (invalidating a statutory garnishment scheme under the Fourteenth Amendment "[w]here the taking of one's property is . . . obvious").

In addition to rectifying the "multiplicity of damages suits" problem that can arise from laws facially taking property from many parties, equitable relief is often also available because a compensatory remedy is impractical for certain facial takings. Takings claimants may seek equitable relief from laws taking money, for instance, because it is impractical and pointless to require one subject to a taking of money to hand over the money and then go seek the same funds back through a post-taking damages suit. *Apfel*, 524 U.S. at 521 (quoting *Student Loan Marketing Ass'n v. Riley*, 104 F.3d 397, 401 (D.C. Cir 1997)). This case raises similar remedial problems. The statute at issue does not take a discrete amount of property for a

discrete amount of time, a scenario which would potentially lend itself to a compensation remedy. It authorizes an ongoing, piecemeal taking of an unknown quantity of medicine products and labor. The parties have no way of knowing how much medicine will be appropriated or how much the manufacturers will incur in administrative costs. Requiring them to seek compensation for this type of facial taking is not practical.

This case is appropriate for injunctive relief. On its face, the challenged statute requires all insulin manufactures to whom the law applies to provide free insulin and to administer this program, at an unknown cost. *PhRMA v. Williams*, Civ. No. 20-1497, 2021 WL 963760, at *2 (D. Minn. Mar. 15, 2021). The law thus appears to require the manufacturers to submit to an uncompensated *per se* physical taking of personal property. *See Horne v. Dep't of Agric.*, 576 U.S. 350, 364-65 (2015). Indeed, the legislature's *explicit goal* was to force insulin manufacturers to bear the burden of providing a costly benefit to the public by appropriating their property. *See Armstrong v. United States*, 364 U.S. 40, 49 (1960) (The Takings Clause is designed to prevent the government "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.").

The facial constitutional infirmities of the Act are best remedied by a declaration and an injunction holding that it cannot be constitutionally enforced

without compensation, not by a requirement that every manufacturer file a subsequent separate claim for damages, particularly since is not possible to know the extent of the ongoing taking of product and services.

## CONCLUSION

For all the foregoing reasons, this Court should reverse.

DATED: May 28. 2021.

Respectfully submitted,

J. DAVID BREEMER
DAVID J. DEERSON
Pacific Legal Foundation

By _____ s/ J. David Breemer _____
          J. DAVID BREEMER

*Attorneys for Amici Curiae*
*Pacific Legal Foundation and*
*The Goldwater Institute*

# CERTIFICATE OF COMPLIANCE

### Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

1.     This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

[X]    this brief contains 3,689 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), or

[ ]    this brief uses a monospaced typeface and contains [state the number of] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X]    this brief has been prepared in a proportionally spaced typeface using MicrosoftWord 2013 in 14-point Times New Roman, or

[ ]    this brief has been prepared in a monospaced typeface using MicrosoftWord 2013 with [state number of characters per inch and name of type style].

DATED: May 28, 2021.


_____s/ J. David Breemer_____
J. DAVID BREEMER

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2021, I electronically filed the foregoing with

the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit

by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that

service will be accomplished by the appellate CM/ECF system

_____ s/ J. David Breemer _____
J. DAVID BREEMER
